**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Terrel Powell,** | ) | **CASE NO. 1:07 CV 2858** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Wal-Mart Stores East, Inc.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon plaintiff's Motion for Summary Judgment (Doc. 22), defendant's Motion for Summary Judgment (Doc. 24) and plaintiff's Motion to Strike Portions of Defendant's Memorandum in Support of Summary Judgment and Affidavits of Bernie Palcisko and Jerry Spencer (Doc. 28). This case alleges reverse sex discrimination in employment.  For the following reasons, defendant's motion is GRANTED and plaintiff's motions are DENIED.

<u>**Facts**</u>

Plaintiff, Terrel Powell, brought this Complaint against defendant, Wal-Mart Stores East, Inc., in the Cuyahoga County Common Pleas Court.  The matter was thereafter removed

1

to this Court on the basis of diversity jurisdiction.  The Complaint asserts two grounds for relief.  Count One alleges sex discrimination in violation of Ohio Revised Code § 4112.02(A).  Count Two alleges wrongful termination and violation of public policy under Ohio law.

Plaintiff began his employment with defendant in 1993 as a sales associate in one of defendant's stores in Weirton, West Virginia.  Ultimately, plaintiff was promoted to the position of Store Manager in January 2004 at the Brooklyn, Ohio store. As Store Manager, plaintiff supervised the Co-Manager, Jaye Keasor (female), and the Assistant Managers, Kimberly Maxwell (female), Cameron Christian (male), Bryan Donegan (male), Rainier Reyes (male), Ty Young (male), Gwen Berlo (female), Linda Lee (female) and Louis Stodo (male).  Plaintiff's immediate supervisor was Market Manager, Keri Brown (female).  Brown's immediate supervisor was Regional Manager, Jerry Spencer (male). (pltf. depo. 9-15)

Defendant maintains three basic beliefs: "respect for the individual, service to our customers and strive for excellence."  Plaintiff was aware of these beliefs.  (pltf. depo. 38-40)

Defendant also maintains a Coaching for Improvement policy, which sets forth the disciplinary policy applicable to all Wal-Mart associates.[1]  (pltf. depo. Ex. 2) The policy outlines a progressive disciplinary policy with four levels: Verbal Coaching, Written Coaching, Decision-Making Day and Termination.  There are three categories of behaviors addressed: job performance, misconduct and gross misconduct.  (*Id.*)  Instances of gross misconduct, however, are not subject to the progressive disciplinary policy, and associates deemed to have engaged in such are subject to immediate termination.  (Brown depo.18-20)

---

[1]    Defendant refers to all of its employees, including management, as associates.

In particular, the policy states,

> Gross Misconduct will not be tolerated.  Coaching for Improvement will not be used to address gross misconduct.  The employment of an Associate who is deemed to have engaged in gross misconduct is subject to immediate termination.  Associates terminated for gross misconduct are not eligible for re-hire.  The following list is not all-inclusive but serves as examples of conduct, which are usually classified as gross misconduct and may result in immediate termination:
>
> ***
>
> •      Rude/Abusive conduct toward a Customer/Member or another Associate.

(pltf. depo. Ex. 2)

In March 2007, Co-Manager Keasor called a meeting of the Assistant Managers to address the "backloading" of the backroom- "getting inventory prepped."  Keasor "pulled" the Assistant Managers "together and basically told them we're going to have to go to a six-day work week because it was unacceptable the way the progress was going."  (Keasor depo. 20-22) Plaintiff was not required to attend the meeting and "just happened to be in the office" where the meeting was taking place, working on his computer.  (pltf. depo. 16-21)  Assistant Manager Rainier Reyes questioned why they would all have to work a six-day week "just because some people were behind."  (Keasor depo. 22)   According to plaintiff, plaintiff "turned around at my computer, and I told him that he is - - his department managers are a reflection of him, and they have no sense of urgency, and they need to get a sense of urgency, and it looks bad on his part because he's their supervisor.  And that's all I said in the meeting."  (pltf. depo. 21-22) According to Keasor, plaintiff "at one point turned around and said, you know what, your problem is you're nothing but a lazy Mfer."  (Keasor depo. 23) Subsequently, either Keasor or one of the Assistant Managers notified Market Manager Brown that plaintiff had made the comment at the meeting that the Assistant Managers were

3

all "F'ing lazy." (Brown depo. 25-26)

This prompted an investigation conducted by Brown and Market Human Resources Manager John Campbell.  (*Id.*)   Brown and Campbell interviewed Keasor, Assistant Managers Berlo, Donegan, and Lee (who was not present at the meeting but discussed other issues regarding plaintiff), Judy Pawnyk (the vision center manager present at the meeting who was not directly under plaintiff's supervision but, according to plaintiff, was part of his management team) as well as plaintiff.  (*Id.* 27, Ex.4; pltf. depo. 15) Brown and Campbell also collected written statements from Berlo, Pawnyk, Keasor and Reyes. (Brown depo. Exs. 5-8) Keasor, Pawnyk and Berlo stated in their interviews and/or written statements that plaintiff told the Assistant Managers during the meeting that they were all "f-ing lazy" or "lazy m-fers."  (*Id.* Exs. 4-7) Reyes's written statement recounts that plaintiff "explained that there was no sense of urgency and further explained that since we are not holding our department managers accountable for their urgency that reflect upon us.  The further details of the meeting are confusing to me due to the anger I was feeling about the comment of our lack of urgency."  (*Id.* Ex. 8) During his interview, Donegan did not say whether or not plaintiff made the comment. (*Id.* Ex. 4)   Plaintiff stated during his interview that he "doesn't remember saying that word," but that he "might have said it- I cuss all the time."  (*Id.*)

Brown and Campbell decided at the conclusion of the investigation that "the evidence pointed to [plaintiff] making that statement... "  Brown and Campbell recommended that plaintiff be demoted from Store Manager and be given a Decision-Making Day coaching. They then discussed their recommendation with Bernie Palcisko, the Regional Human Resources Manager.  Brown and Campbell were subsequently told by Palcisko and Regional

Manager Jerry Spencer that plaintiff was to be terminated immediately.  (Brown depo. 46-47)

Palcisko avers the following[2].  After he was contacted by Campbell and Brown following their investigation, Palcisko explained to Campbell that he would contact him with his recommendation after he spoke to his peers.  Palcisko then spoke to other Regional Human Resource Directors to discuss their experiences in similar situations.  After these discussions, Palcisko determined that Store Managers who use profanity and/or rude and abusive language, which is directed towards another associate or a customer, are usually

---

[2]     Plaintiff has filed a Motion to Strike Portions of Defendant's Memorandum in Support of Summary Judgment and Affidavits of Bernie Palcisko and Jerry Spencer.  Plaintiff contends that most of Palcisko's affidavit and Spencer's affidavit (discussed *infra*) should be stricken for lack of foundation, lack of personal knowledge and hearsay.  As a result, plaintiff further asserts that those portions of defendant's memoranda referring to these affidavits should likewise be stricken. Because, as discussed herein, plaintiff fails to show that defendant is that unusual employer who discriminates against men and, thus, fails to establish a prima facie case, the consideration of Palcisko's or Spencer's affidavits is not necessary to granting summary judgment.  Additionally, defendant's main reason for submitting the affidavits is to show that Palcisko made the decision to terminate plaintiff with Spencer's approval, and that Palcisko relied on the results of Brown's and Campbell's investigation. Obviously, these facts are within the affiants' personal knowledge.  Finally, plaintiff points to no law demonstrating that the particular portions of the affidavits should be stricken. The Court does not find it necessary to consider the admissibility of the affidavits, line by line, as proposed by plaintiff given that they are not critical to determining the motion.  Even so, the Court is not convinced of plaintiff's assertions.  Plaintiff, for instance, seeks to strike portions of Palcisko's affidavit that address how he was contacted by Brown and Campbell following their investigation into the allegations that plaintiff had engaged in gross misconduct during a management meeting.  Plaintiff contends that the affidavit lacks foundation and personal knowledge.  Obviously, Palcisko would have personal knowledge that Brown and Campbell contacted him, and the nature of the reason as to why they contacted him.  Furthermore, the evidence before this Court is replete with admissible evidence regarding the meeting, the investigation that followed and Brown's and Campbell's determination.

5

terminated for engaging in gross misconduct.  When the profane language is not directed toward anyone and/or is not used in a part of the workplace where it could be heard by customers, the associate is usually coached regarding the misconduct.  Because Brown and Campbell had determined, through their investigation, that plaintiff had directed the profanity towards members of the management team, Palcisko recommended that he be terminated. Since plaintiff was a Store Manager, his termination would have had to be approved by Regional Manager Jerry Spencer.  (Palcisko aff.)  Spencer avers,

> ... [plaintiff] was terminated upon the recommendation and advice of Regional Human Resources Director Bernie Palcisko.
>
> Although I do not recall a specific conversation with Mr. Palcisco regarding [plaintiff's] termination, Mr. Palcisko and I discuss the circumstances of each case when a Store Manager is either disciplined or terminated.  Since [plaintiff] was a Store Manager, he could not have been terminated without my approval.

(Spencer aff.)

Brown and Campbell informed plaintiff that he had been terminated at a meeting on April 7, 2007.  The Exit Interview document, signed by Brown, states that plaintiff "made a comment to his management team during a management meeting that they [were] all 'f— lazing."  The document indicates that this was an involuntary termination for gross misconduct on the basis of "profanity- lack of respect for the individual."  (pltf. depo. Ex. 3) Following his termination, plaintiff was replaced by Mike Sly (male).  (pltf. depo. 106).

This matter is now before the Court upon cross motions for summary judgment.  The motions will be addressed together.

**<u>Standard of Review</u>**

Summary Judgment is appropriate when no genuine issues of material fact exist and

6

the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*,

8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine

issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its

resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial.  If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562

(6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must

"produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53

F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Gender Discrimination**

Plaintiff's claim set forth in Count One is brought under Ohio law.  This Court, however, applies the same burden-shifting approach and judicial standard of review that is applied in Title VII cases. *Gibson v. Shelly Co.*, 2008 WL 3876432 (6th Cir. August 19, 2008) (citing *Noble v. Brinker Int'l, Inc*., 391 F.3d 715, 720 (6th Cir.2004) ).

In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000) Under the circumstantial-evidence approach to proving discrimination, the familiar *McDonnell Douglas/Burdine* burden-shifting framework applies:

> First, the plaintiff must make out a prima facie case of discrimination. After a plaintiff creates a presumption of discrimination by establishing a prima facie case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer are pretextual. Throughout this burden-shifting process, the ultimate burden of persuading the trier of

8

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Clark v. Lockheed Martin Energy Systems*, 2008 WL 2872178 (6th Cir. July 25, 2008) (internal quotations and citations omitted).

To establish a prima facie case, plaintiff must demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp*., 533 F.3d 381 (6th Cir. 2008).

Because plaintiff herein is not a member of a protected class, this is a "reverse-discrimination" case.  Accordingly, instead of the first requirement above, plaintiff must show that "background circumstances support the suspicion that the [defendant] is that unusual employer who discriminates against the majority." Instead of the fourth element, plaintiff must show that defendant  "treated differently employees who were similarly situated but not members of the protected group," in this instance, males. *Plumb v. Potter*, 212 Fed.Appx. 472 (6th Cir. 2007) (citing *Yeager v. Gen. Motors Corp*., 265 F.3d 389, 397 (6th Cir.2001) ).  *See also Wilson v. Ohio,* 178 Fed.Appx. 457 (6th Cir. 2006) (In cases of reverse discrimination, under the first prong of the prima facie case, a plaintiff must demonstrate background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority. To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class.)

A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an

9

employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). The plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir.2001).

**(a) Direct Evidence**

In his Reply in support of his own Motion for Summary Judgment, plaintiff asserts that he has direct evidence of reverse gender discrimination.  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Goller v. Ohio Dept. of Rehabilitation and Correction,* 2008 WL 2796080 (6th Cir. July 18, 2008) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003)). "It does not require the fact finder to draw any inferences to reach that conclusion." *Talwar v. Catholic Healthcare Partners*, 258 Fed.Appx. 800 (6th Cir. 2007) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000) ).

Plaintiff points to Kimberly Maxwell's deposition testimony.  She stated that "I've been privy to comments from Jaye Keasor on how she's going to take over the building and we don't need [plaintiff]. You know, us women can run this..."  (Maxwell depo. 38) Maxwell also stated that she had heard of a conspiracy where Keasor was going to take over the building and Linda Lee was going to be her Co-Manager.  (*Id.* at 38-39) Finally, Maxwell

testified that Keasor "implied" that she wanted to get plaintiff fired by making statements such as, "We don't need him. If we don't need him, are we going to kill him or do we want to fire him."  (*Id.* at 61)

Plaintiff asserts that after Keasor made these statements, Keasor, Pawnyk and Berlo accused plaintiff of using profanity in the meeting.  Plaintiff contends that defendant "relied on the written statements and complaints from women managers who it knew conspired to fire plaintiff." (Doc. 29 at 5) First, this is certainly an inference which plaintiff seeks to be drawn from the statements relied upon above.  Thus, the statements themselves cannot be direct evidence.  Second, plaintiff does not show that the decision-maker knew the women were conspiring against plaintiff. To the extent that plaintiff is arguing that Keasor's statements, standing alone, constitute direct evidence, his argument fails because Keasor was not involved in the decision to terminate plaintiff and, therefore, her comments are irrelevant. See *Benjamin v. Brachman*, 246 Fed.Appx. 905 (6th Cir. 2007 ) (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir.2003) and *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir.2002)) ("Discriminatory comments can constitute direct evidence of discrimination provided that they were made by an individual involved in the decision-making process regarding the plaintiff's employment. Conversely, comments made by individuals not involved in the decision-making process do not constitute direct evidence of discrimination.")

Plaintiff also submits a "statement" signed by Paula Suttle (whose identity is not explained) on May 7, 2007 which states:

On Wed April 4, 2007 I was standing at the front registers

11

> Co. Mgr. Jaye [Keasor] came in the front doors about 6-6:30 AM.  She looked at me and said- I'm taking [plaintiff] down!  The next day- Thursday April 5 2007 she looked at me as she came in the front door and said "I'm gonna do everything to save his job.["]
>
> Linda Lee came in after her and was yelling about some text messages from [plaintiff] and said she's gonna have his F– A– fired.

(Doc. 29 Ex. N).  Because this statement was submitted with the Reply brief, defendant did not have an opportunity to address it in briefing plaintiff's Motion for Summary Judgment.  Again, the evidence requires an inference- especially given that it appears to contain contradictory statements made by Keasor.

Next, plaintiff asserts that defendant failed to follow its own policy requiring investigating managers to retain documents of profanity incidents as evidenced by Market Manager Patrick Shank's admission that he cannot locate records related to an incident when Keasor used profanity.  This, of course, is not direct evidence of discrimination as it requires an inference.

Finally, plaintiff asserts that defendant gave credence to the women's statements while investigating the allegation made against plaintiff, while disregarding the males' statements and failing to interview a male present at the meeting.  Once again, this evidence requires that inferences be made.  Further, it is more properly addressed with regard to pretext. The Court will address it there.

For these reasons, plaintiff fails to demonstrate direct evidence of discrimination.

**(b) Circumstantial Evidence**

Defendant argues that plaintiff cannot establish a prima facie case of reverse sex discrimination because he cannot establish the first or fourth elements.  For the following

reasons, this Court agrees.

Under the first prong of the prima facie case, plaintiff must demonstrate background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against men.  Defendant points to the following evidence in support of its assertion that this element is not satisfied.  At the time of plaintiff's termination, eight of the ten Store Managers under Keri Brown were men.  (Brown depo. 12) The decision to terminate plaintiff was made by a male, Bernie Palcisko, with the approval of Jerry Spencer, a male. (Palcisko aff.; Spencer aff.)  Plaintiff was replaced by a male.  (pltf. depo. 106)

Plaintiff does not dispute this evidence except to assert that Keri Brown, a female, terminated plaintiff. Plaintiff points to the Exit Interview document signed by Ms. Brown on April 7, 2007.  While Brown may have informed plaintiff that he had been terminated, however, the evidence does not show that Brown was the decision-maker.  As discussed above, Brown testified that following their investigation, she and Campbell recommended that plaintiff be demoted from Store Manager and be given a Decision-Making Day coaching. (Brown depo. 46-48) But, Brown testified, Bernie Palcisko made the decision to terminate plaintiff's employment immediately.  (*Id.*)  Palcisko avers that he recommended that plaintiff be terminated, and that Spencer approved the recommendation.  (Palcisko aff.)  As such, the evidence shows that plaintiff was terminated by a male.

Plaintiff asserts that defendant is the unusual employer which gives preference to women by not disciplining them for the same conduct for which men are disciplined and even terminated. As defendant points out, however, evidence that similarly situated females were treated more favorably is more properly addressed with regard to the fourth prong of the

13

prima facie case.  Accordingly, the Court will address it there.

Plaintiff additionally asserts that there is pending a massive class action lawsuit brought by women for gender discrimination against defendant in the Ninth Circuit and, as a result, defendant has taken a more favorable stance toward women. See *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) (decision regarding certification of plaintiff class).  This Court cannot presume, in the absence of other evidence and merely on the basis of the existence of this lawsuit, that as a result of the pending lawsuit defendant is treating its female employees more favorably than its male employees.

Plaintiff further points to deposition testimony that defendant has a policy or protocol that "we like to have a female representative present" when there is a "female coaching situation or evaluation situation" where the manager imposing the coaching or evaluation is male.  (Patrick Shank depo. 19) This is not evidence showing that females are disciplined in a more favorable manner than males when both engage in the same conduct.

Finally, plaintiff points to his own deposition testimony:

Q.  What about John Campbell, did he ever tell you that he thought the decision to terminate you was based on your gender?

A.  He said it could possibly be because they did not treat me fairly, he made the comment, the same as the female managers in the store that were accused of the same issue or whatever.

(pltf. depo. 67-68). Campbell's opinion, however, that the decision may have been discriminatory because it was unfair does not show that defendant, in general, discriminates against men. Defendant asserts that plaintiff's deposition testimony as to what Campbell may have believed amounts to hearsay which this Court may not consider in deciding summary judgment. The Court need not even determine whether the statement is hearsay because it is

14

so speculative.  Campbell supposedly stated that the decision "could possibly" have been discriminatory merely because it was unfair.  Finally, in its Reply in Support of its Motion for Summary Judgment, defendant submits Campbell's own affidavit which clearly states, "I do not have any reason to believe that [plaintiff'] gender played any role in Mr. Palcisko's decision to recommend his termination."  (Campbell aff.)

For these reasons, plaintiff fails to come forward with evidence showing that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against men.  In the absence of such, plaintiff fails to establish a prima facie case and his reverse gender discrimination claim fails.

Assuming he has satisfied the first prong, the Court examines whether plaintiff has demonstrated that the fourth prong has been satisfied, i.e., defendant treated differently female employees who were similarly situated.

To satisfy the similarly situated requirement, a plaintiff must show that the comparable employee is similar "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998) (citing *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 802 (6th Cir.1994) ).  "In announcing the "all of the relevant aspects" standard, *Ercegovich* narrowed this court's prior holding in [*Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir.1992)], which had required that the plaintiff and the comparable employee be "similarly situated in all respects." *Barry v. Noble Metal Processing, Inc.,* 276 Fed. Appx. 477 (6th Cir. 2008).  Accordingly,

> While the precise aspects of employment that are relevant to determining whether the similarly situated requirement has been satisfied depend on the facts and circumstances of each case, this court has generally focused on whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the

15

same standards; and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* (citing *Ercegovich,* 154 F.3d at 352).

Plaintiff points to the following as evidence that similarly situated females were treated differently.

First, Jaye Keasor, a female, was given a Decision-Making Day for using profane language, while plaintiff was terminated. Keasor's use of the inappropriate language was considered Misconduct, while plaintiff's was considered Gross Misconduct.  (Doc. 22 Ex. O) As defendant points out, however, as a Co-Manager, Keasor was plaintiff's subordinate who reported directly to plaintiff.  Plaintiff reported to the District Manager.  Therefore, the comparator did not have the same supervisor as plaintiff and was not similarly situated.

Plaintiff argues that he and Keasor are similarly situated as evidenced by the fact that the job description of the Store Manager is the same as the Co-Manager. As discussed above, however, the two comparators must share the same supervisor.  In this instance, the Store Manager is the Co-Manager's supervisor.  (Keasor depo. 17) Additionally, Palcisko avers that the Store Manager is "the highest ranking member of management in the Store."  (Palcisko aff.)  The Sixth Circuit has recognized that "in many instances the term 'supervisor' should be construed broadly to include cases where both employees' situations were handled by the same 'ultimate decision-maker'."  *Barry*, *supra.*  Palcisko made the decision to terminate plaintiff, but he was not consulted regarding Keasor's discipline for profanity.[3]  (Palcisko aff.)

---

[3]       Incidentally, Keasor was disciplined after plaintiff was terminated and, thus, plaintiff did not impose the discipline.  (Doc. 22 Ex. O)

16

Moreover, it does not appear that Keasor engaged in the same conduct as plaintiff. While plaintiff directed the foul language at his management team, Keasor's Coaching for Improvement disciplinary document states, "Inappropriate language used in the workplace witnessed by two associates." (*Id.*)  In fact, plaintiff testified that he was not aware of any female Store Manager who directed profanity at an Assistant Manager but was not terminated.  (pltf. depo. 79-80) [4]

Second, Assistant Manager Kimberly Maxwell testified that her female Customer Service Manager called her a "f– ing ni– -" and was allowed to return to work by Store Manager, Brian Fabniak.  (Maxwell depo. 72).  This is not a valid comparison.  The supervisors who dealt with the situation were different.  Additionally, although the female manager's conduct appears to have been more egregious than plaintiff's conduct, the Court has only Maxwell's deposition testimony (as opposed to the documentary evidence in plaintiff's case) showing what statement was made by the manager and the consequences which resulted.

Third, plaintiff contacted Keri Brown to report that two Assistant Managers were having sexual relations.  The male was transferred and the female was not. Again, these two

---

[4]     Plaintiff additionally points to evidence that Keasor was appointed to Assistant Manager without having to complete the 12 week manager training program while plaintiff had to do so.  This assertion, however, has nothing to do with engaging in similar conduct and being dealt with in a different fashion by the same supervisor. Plaintiff also shows that when Keasor was later fired, she remained eligible for rehire although Market Manager Patrick Shank testified that because Keasor's situation involved "an integrity issue," it should have been a "no re-hire."  (Shank depo. 24) Keasor, however, was terminated for prematurely cashing her paycheck.  (Keasor depo. 37) Thus, the evidence does not show that the employees were treated differently for the same or similar conduct.

17

employees did not engage in the same conduct for which plaintiff was terminated.

Fourth, Kimberly Maxwell received a Verbal Coaching for Improvement discipline for conduct characterized as Misconduct and involving the following: "On a few occasions Kimberly has been observed not using respective [sic] for the individual when she speaks to the other trainees and the trainer. She has become loud in front of associates." (Doc. 22 Ex. R) Maxwell also received a Decision-Making Day discipline for the stated reason:

> ..[D]id not follow steps as outlined in the policy to apprehend shoplifter[;] Rude conduct towards Associates and refusing to authorize distribution of their paychecks[;] Inappropriate display of anger and frustration in front of hourly associates[;] Insubordination when directed by the Market Office to distribute the checks.

(*Id.* Ex. S) Once again, the conduct is far from similar.

Fifth, Keasor testified that most of the management team used profanity. (Keasor depo. 24) She cited specific incidents where profanity was used by Assistant Managers Rainier Reyes, Gwen Berlo and Linda Lee, and Market Manager Keri Brown. (*Id.* 24, 92-95) Again, none of these employees is a Store Manager, like plaintiff, and so they are not similarly situated. Moreover, they report to different supervisors. Berlo, Lee and Reyes (a male), in particular, reported to plaintiff who was responsible for their discipline. Thus, it must have been plaintiff who chose not to discipline these subordinates. Plaintiff does not present evidence, other than Keasor's deposition testimony, that Market Manager Brown's supervisor was made aware of her use of profanity but failed to discipline her, or that complaints were made about her misconduct to her supervisors. As such, she is not similarly situated to plaintiff.

Finally, Elizabeth Toth was given a Verbal Coaching for Improvement for being "disrespectful to [her] District Manager, Malcolm Philips." (Doc. 22 Ex.T) It is unclear who

18

Toth is.  Nonetheless, she was disciplined by a different supervisor than the one who terminated plaintiff. (*Id.*)  Nor does the Coaching for Improvement document show that she engaged in the same conduct as plaintiff.

For these reasons and because plaintiff fails to point to evidence showing that a female Store Manager who directed profanity at her managerial staff was not terminated by Palcisko, he fails to show that similarly situated females were treated more favorably than plaintiff. Thus, plaintiff fails to show that the fourth prong has been satisfied.

For the foregoing reasons, plaintiff fails to establish a prima facie case of reverse gender discrimination.

Assuming plaintiff has established a prima facie case, defendant has asserted a legitimate non-discriminatory reason for terminating plaintiff, i.e., he called his subordinates "f– lazy" during a management meeting in violation of defendant's policy which considers such to be gross misconduct subject to immediate termination.

Plaintiff argues that defendant's reason is a pretext to conceal discrimination as evidenced by the fact that defendant was made aware of female employees engaging in profanity and/or lack of respect for the individual but those employees were not terminated. As discussed above, however, plaintiff does not show that female Store Managers who directed profanity toward their management staff were not terminated.

Additionally, plaintiff points out elsewhere in his brief that the three female managers (Keasor, Pawnyk and Berlo) stated in their interviews and/or written statements that plaintiff used the profanity in the meeting, while the two male managers (Reyes and Donegan) did not state that plaintiff used profanity.  Plaintiff also points out that while Ty Young (male) was

present at the meeting, he was not interviewed during the investigation.  Plaintiff then points to Keasor's statement that "us women can run this."  Presumably, plaintiff is surmising that this combined evidence shows that defendant's proffered reason for the termination has no basis in fact.  This Court disagrees.  Even if the Court accepts that the women lied during the investigation to get rid of plaintiff because he is a man, this does not show that Brown and Campbell did not legitimately investigate whether plaintiff used the profanity.  More importantly, Palcisko and Spencer, the decision-makers, relied on Brown's and Campbell's determination that plaintiff had used the profanity.  The decision-makers, therefore, had an "honest belief" that plaintiff committed a gross misconduct and should be terminated.  See *Gant v. Genco I, Inc*., 274 Fed.Appx. 429 (6th Cir. 2008) ("Under [the honest belief] rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.") and *Goller v. Ohio Dept. of Rehabilitation,* 2008 WL 2796080 (6th Cir. July 18, 2008) (internal citations and quotations omitted) ("Under the Sixth Circuit's modified honest-belief approach, for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.")

For these reasons, Count One fails.

**(2) Public Policy**

Plaintiff alleges that defendant discriminated against him on the basis of his gender in violation of the public policy set forth in Ohio Revised Code § 4112.

20

The Ohio Supreme Court in *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311 (2007), held that there is no need to recognize a common law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.  The court specifically recognized that Ohio Revised Code § 4112 provides complete relief for discrimination.  On this basis, plaintiff's public policy claim fails.

While not explicitly stating so, plaintiff contends that *Leininger* is inapplicable because it did not involve gender discrimination.  Indeed, the court in *Leininger* held that a common law tort claim for wrongful discharge based on public policy against *age* discrimination does not exist, because the statutory remedies contained in § 4112 provide complete relief for a claim for age discrimination.  Nonetheless, this Court finds, as other courts have, that the same rationale precludes plaintiff's common law claim here.  In *Ley v. P&G Mfg. Co.,* 2008 WL 918448 (N.D.Ohio April 1, 2008), the court found the plaintiff's public policy claims based on gender and disability to be subject to dismissal because of the adequate remedies provided by the Ohio statute. Similarly, *Meyer v. Maxim Healthcare Serv., Inc*., 2007 WL 3005947 (S.D.Ohio Oct. 12, 2007), applied *Leininger* in the context of pregnancy discrimination. Likewise, in *Wakefield v. Children's Hosp*., 2008 WL 3833798 (S.D.Ohio August 13, 2008), the court, relying on *Leininger*, determined that plaintiff's separate public policy claims for race and national origin discrimination were prohibited by § 4112 which provides an adequate remedy. Finally, *Bialaszewski v. Titanium Metals Corp*., 2008 WL 2387059 (S.D.Ohio June 11, 2008), recognized that although *Leininger* addressed age discrimination, that holding applies equally in the context of disability discrimination.

Moreover, even if the public policy claim was not barred by the application of

21

*Leininger*, this claim would fail because its viability hinges on the merits of the statutory claims of discrimination. *Whitt v. Lockheed Martin Util. Svcs. Inc*., 209 F.Supp.2d 787, 792 (S.D.Ohio 2002). Since defendant is entitled to summary judgment on the statutory claim, the wrongful discharge claim cannot succeed. *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 569 (6th Cir.2003) ("Under Ohio law ... when the employee's discharge is not actionable under the law that establishes the 'clear public policy,' the companion common-law claim for relief likewise fails as a matter of law.").

For these reasons, Count Two fails.

## Conclusion

For the forgoing reasons, plaintiff's Motion for Summary Judgment is denied and defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/1/08